IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Augustine Bernal Thomas,<br><br>                Defendant/Movant,<br><br>v.<br><br>United States of America,<br><br>                Respondent. | No. CV 13-02299 PHX SRB (MEA)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE SUSAN R. BOLTON:**

On November 8, 2013, Movant, currently confined at the Federal Bureau of Prisons facility in Coleman, Florida, docketed a motion seeking to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. Movant contends his federal criminal conviction must be vacated because he was denied his right to the effective assistance of counsel. Respondent docketed a response to the motion on August 28, 2014. Any reply to the answer to the motion was due September 28, 2014.

**I Procedural Background**

An indictment returned July 6, 2010, charged Movant and two co-defendants with one count of conspiracy to commit obstruction of justice by retaliating against a witness and aiding and abetting, in violation of 18 U.S.C. § 1513(f). See Criminal Doc. 1. Movant and his co-defendants were also indicted on one count of conspiracy to commit obstruction of justice by assaulting, i.e., retaliating against, a witness for his testimony in a criminal matter, and aiding and abetting, in violation of 18 U.S.C. §§ 1531(b)(1) and (c)

and 2. Id.[1]

On February 16, 2011, a jury found Movant guilty on both counts of the indictment. See Criminal Doc. 71. The probation office calculated a sentencing range of 360 months imprisonment to life imprisonment. See Criminal Doc. 92. On May 23, 2011, Movant was sentenced to concurrent 360 month terms of imprisonment on each count, followed by five years of supervised release. The sentences in this matter were ordered to be served consecutively to the terms of imprisonment Movant was already serving for a conviction for a 2005 assault with a deadly weapon and a 2008 second-degree murder conviction, to which latter charge Movant pled guilty. See Criminal Doc. 96.

Movant took a timely direct appeal of his convictions and sentences. In his direct appeal Movant argued the District Court erred by not excluding the testimony of the prosecution's expert witness and that his sentence was unreasonable. The Ninth Circuit Court of Appeals affirmed Movant's convictions and sentences in a  memorandum decision entered October 17, 2012. See Criminal Doc. 117; 485 Fed. App.. 285, 2012

---

[1] "The defendant in this case is charged with agreeing with other people, and commanding, counseling, inducing or procuring those people, to retaliate against Jeremy Zepeda for testifying in a federal criminal trial." Criminal Doc. 56.
> On October 29, 2009, Defendant Augustine Bernal Thomas ("Defendant") was an inmate at the Central Arizona Detention Center, operated by Corrections Corporation of America ("CCA"), in Florence, Arizona. Defendant was housed in 800 Unit, Lima Pod, along with inmates Cruz Gonzales, Waylon Thompson, and Jeremy Zepeda. Defendant was the leader, or "rep," of the Native American inmates housed in 800 Lima Pod. Inmate Jeremy Zepeda testified against his brother in a jury trial in U.S. v. Damien Zepeda, CR 08-1329-PHX-ROS. Defendant learned that the victim had testified, so Defendant called a meeting of all the Native American inmates of 800 Lima Pod. In that meeting, Defendant told the group that someone had testified against another Native and was no good. Defendant then confronted Zepeda in front of everyone and told the group that it was Zepeda who had testified. Defendant told Zepeda that he was going to get assaulted for it, and Defendant ordered Zepeda to follow two other inmates (Gonzales and Thompson). Zepeda did as he was instructed and followed them to his own cell, where they began beating him.
>   As they were beating him, Gonzales and Thompson told Zepeda that they were beating him because he had testified..

Doc. 57 at 3.

WL 4918980.

In his section 2255 motion, Movant contends he was denied his right to the effective assistance of counsel.

**II Analysis**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, [] (1984).... To prevail on a claim of ineffective assistance of counsel, petitioner must show 1) his attorney's performance was unreasonable under prevailing professional standards; and 2) there is a reasonable probability that but for counsel's unprofessional errors, the results would have been different. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). "Strickland defines a reasonable probability as 'a probability sufficient to undermine confidence in the outcome.'" Id.

United States v. Span, 75 F.3d 1383, 1386-87 (9th Cir. 1996). See also United States v. Thomas, 417 F. 3d 1053, 1056 (9th Cir. 2005). Movant must overcome a strong probability that counsel's conduct fell within a wide range of reasonable professional assistance or what could be considered sound trial strategy. United States v. Fredman, 390 F.3d 1153, 1156-57 (9th Cir. 2004).

The Sixth Amendment entitles a criminal defendant to "a reasonably competent attorney, whose advice is within the range of competence demanded of attorneys in criminal cases." United States v. Cronic, 466 U.S. 648, 655, 104 S. Ct. 2039, 2044-45 (1984) (internal quotations omitted). In order to find that Movant was deprived of the effective assistance of counsel and grant him relief on this claim pursuant to section 2255, the Court must conclude Movant's trial counsel's performance was deficient and that the deficient performance prejudiced Movant. See, e,.g., United States v. Manzo, 675 F.3d 1204, 1209-10 (9th Cir. 2012); United States v. Withers, 638 F.3d 1055, 1066-67 (9th Cir. 2011). It is Movant's burden to provide the Court with sufficient evidence from which the Court can conclude counsel's performance was unconstitutionally ineffective. See, e.g., Withers, 638 F.3d at 1066-67.

Counsel's performance is deficient when it is unreasonable, or not "within the range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687, 104 S. Ct. at 2054. Judicial scrutiny of counsel's performance must be "highly deferential." Id., 466 U.S. at 689, 104 S. Ct. at 2065. See also Carter v. Lee, 283 F.3d 240, 248-49 (4th Cir. 2002). Movant must overcome a strong presumption that his counsel's representation was within a wide range of reasonable professional assistance. See United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1996); United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991).

Movant contends counsel did not file written discovery requests. Respondent argues:

> counsel made comprehensive written discovery requests directly to the government, in accordance with Rule 16 of the Federal Rules of Criminal Procedure. See Attachment A. In those written discovery requests, counsel asked the government to provide information about evidence it intended to use at trial and at sentencing, any exculpatory evidence, and any evidence of other crimes, wrongs, or acts it intended to use at trial. See Attachment A. Counsel effectively represented Defendant by making written discovery requests directly to the government.

Doc. 15 at 4.

Movant further alleges his defense counsel did not interview witnesses at the prison or other witnesses suggested by Movant. Movant also maintains counsel was ineffective for failing to secure the testimony of Movant's co-defendants. Respondent avers: "Other than the two co-defendants, it is unclear what witnesses counsel should have secured. Defendant provides no evidence, by affidavit or otherwise, to show who these witnesses might be, or what they might have added to his defense." Id. at 5.

Movant also asserts his counsel's performance was deficient because counsel did not subpoena records from CCA and failed to subpoena video surveillance.

Respondent argues:

> [C]ounsel requested comprehensive discovery from the government (Attachment A), which would have encompassed records and video surveillance from CCA, to the extent they were available, and discoverable under Rule 16. Defendant does not specify what records he believes

counsel should have obtained from CCA. He presumably complains that counsel did not subpoena the video surveillance of his pod taken around the time of the assault, about which Mr. Gammill testified at trial. Even had Mr. Klink attempted to subpoena the video surveillance, however, he would have been unsuccessful in obtaining it because the video was automatically recorded over and is gone.

Id. at 6.

Movant further argues that his defense counsel was ineffective because he did not file pretrial motions challenging the indictment or the evidence procured by the prosecution. However, as noted by Respondent, Movant presents no evidence showing that the indictment or the government's evidence was susceptible to challenge.

Movant further asserts that his counsel was ineffective at trial because he failed to call "Vitorio" as a defense witness. Movant has not established how this witness might have aided his defense—as argued by Respondent, this individual would probably not have implicated himself in a criminal assault.

Movant also alleges that counsel rendered ineffective assistance by failing "to aggressively cross-examine and impeach the government's two non-medical witnesses, to wit, the victim and the case manager, both of whom had provided inconsistent information as to the assault in previous reports." Doc. 2 at 9. However, as noted by Respondent, "counsel did exploit on cross-examination inconsistencies between the trial testimony and the reports and statements made before trial." Doc. 15 at 7.

Respondent argues:

Counsel also effectively drew from Zepeda that he told medical staff he was beaten by two inmates, that he never mentioned Defendant to the medical staff, and that he did not tell the medical staff Defendant had instructed the inmates to beat him. (RT 2/15/11 at 100-101.)
Finally, counsel drew from Zepeda that he similarly reported to non-medical prison staff that he was beaten by two inmates, that he did not tell non-medical prison staff Defendant had directed the beating...
\*\*\*
Contrary to Defendant's assertions, the record shows that counsel effectively cross-examined both Zepeda and Gammill. Through cross-examination, he brought to the jury's attention inconsistencies between

their testimony and their pretrial reports and statements. He then effectively exploited those inconsistencies during closing argument.

Id.

Movant also complains that counsel did not respond to the government's notice of expert witness, did not procure witnesses to contradict the expert, permitted the expert to testify as if he were an eyewitness, and offered no rebuttal testimony.  Doc. 2 at 6-7.

Respondent argues:

When the Court wondered whether giving an expert instruction might elevate Gammill's opinion to seem to be worth more than perhaps it was, counsel agreed. Under the circumstances, the decision not to elevate Gammill's testimony to that of an expert witness was professionally reasonable.
Counsel also attempted to preclude Gammill's opinion that the assault was ordered by a rep. When the government asked Gammill whether the Natives would assault one of their own in this way without the rep calling it, counsel objected on the ground that the question invaded the province of the jury. (RT 2/16/11 at 186.) Counsel also attempted to preclude Gammill's testimony about what he saw on video surveillance. When the government asked Gammill to relate to the jury what he saw on the video, counsel objected because it was not the best evidence (presumably the best evidence would have been the video itself).

Id. at 10.

Movant further claims his counsel was ineffective because an "acknowledgement by Gammill that Vitorio was also a 'rep,' and also responsible for prisoner behavior in the same housing unit that Petitioner was has housed in, would have shown that Petitioner was not the only prisoner in that housing unit with influence over prisoners." Doc. 2 at 6-7.  As noted by Respondent, this statement is factually incorrect as Movant's counsel did elicit from Gammill that "Victorio" was in the same pod as Defendant and that "Victorio" was also a rep.  See Criminal Doc. 108 at 194-195.

With regard to counsel's alleged deficient performance during sentencing, Movant contends his counsel failed to file any documents after conviction, other than a sentencing memorandum, that counsel did not "file meaningful objections to Petitioner's PSR," and

- 6 -

1  that counsel erred by tacitly agreed "to the government's sentencing position at the
2  sentencing hearing rather than vociferously objecting to it". Doc. 2 at 10. Movant also
3  alleges counsel failed to demand "a hearing on the question of whether or not Petitioner
4  deserved a minor role reduction." Id.[2]

5  As noted by Respondent, Movant has not established that counsel's alleged
6  "errors", with regard to filing documents after Movant's conviction or his asserted failure
7  to docket "meaningful" objections to the PSR, were prejudicial. Additionally, as noted
8  by Respondent:

> Counsel pointed out that the victim's injuries were not life-threatening, that the co-defendants received dramatically lower sentences, and that Defendant had significant deficits of mental, emotional, and physical health. (CR 93 at 2.) Counsel also argued that "the recommended Guideline ranges in this matter for this Defendant is far in excess of that which is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence from further crimes." (CR 93 at 2.)
>  The Sentencing Memorandum clearly shows that counsel did not agree tacitly, or otherwise, with the government's sentencing position. Counsel stated, "To suggest, as the government does, that the sentence recommended by the presentence writer and as calculated pursuant to the Guidelines is reasonable, defies, in counsel's view, common sense." (CR 93 at 2.) Counsel also referred to the government's sentencing position as a proposal to "lock the Defendant in a cage for the rest of his life." (CR 93 at 2.) He further stated, "If the government was serious about training and treatment, the government would recommend a less severe sentence to afford Defendant the opportunity to demonstrate the benefits of training and treatment upon release." (CR 93 at 2-3.)

---

[2] Respondent avers:
> In fact, the only evidence in the record regarding Defendant's role in this case, the testimony of Zepeda and Gammill, supports the upward adjustment that was assessed in the PSR because Defendant was an organizer, leader, manager, or supervisor in the assault. Not only is there no support in the record for a § 3B1.2 adjustment, but defendant has provided no legal precedent that suggests such an adjustment would be appropriate for an individual who orchestrated a prison assault. Given the circumstances surrounding Defendant's role in this offense, counsel did not provide ineffective assistance by failing to request a § 3B1.2 adjustment.

Doc. 15 at 14.

Doc. 15 at 10-11.

Movant's claims regarding his counsel's allegedly unconstitutionally deficient performance are either factually incorrect or assert allegations regarding trial strategy, which is per se not deficient performance, and Movant has not established that any alleged error was prejudicial. Accordingly, Movant is not entitled to relief on the claim that he was denied his constitutional right to the effective assistance of counsel. See Fredman, 390 F.3d at 1156-57; Shah v. United States, 878 F.2d 1156, 1162 (9th Cir.1989) (holding the failure to raise a meritless claim does not constitute ineffective assistance of counsel). Compare Thomas, 417 F.3d at 1059.

**IT IS THEREFORE RECOMMENDED that** Mr. Thomas' motion for relief pursuant to section 2255 be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b)(2), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.

Pursuant to Rule 7.2(e)(1), Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

/

/

1 /
2     Dated this 7th day of October, 2014.

                                          Mark E. Aspey
                                  United States Magistrate Judge